**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILDE ALEXANDER PERDOMO-
CAURO

               Petitioner,

   v.

WARDEN, PIKE COUNTY
CORRECTIONAL FACILITY

               Respondent.

   :
   :
   :
   :
   :   3:26-cv-1159
   :   (JUDGE MARIANI)
   :
   :
   :
   :
   :
   :

## MEMORANDUM OPINION

### I.    FACTUAL BACKGROUND

On May 1, 2026, Petitioner Wilde Alexander Perdomo-Cauro ("Petitioner"), a citizen of Venezuela residing in the United States since December 2023, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner is detained at the Pike County Correctional Facility within the Middle District of Pennsylvania and names as Respondent the Warden of the Pike County Correctional Facility.

On or about December 1, 2023, Petitioner entered the United States after crossing the Rio Grande River near Eagle Pass, Texas. (Doc. 6-2 at 3-4). Petitioner was encountered by US Customs and Border Patrol, processed for a Notice to Appear, granted humanitarian parole under 8 U.S.C. § 1182(d)(5), and was released into the United States on his own recognizance on or about December 2, 2023. (*Id.*); (Doc. 10 at 2-3). The Notice to Appear indicated that Petitioner was an "arriving alien" and charged him as removable

pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled. (Doc. 6-7 at 3).

On February 23, 2024, Petitioner filed an application for asylum and withholding of removal, both of which remain pending. (Doc. 6 at 4). According to Respondent, on December 2, 2025, Petitioner failed to report to his immigration appointment "which was a violation of the conditions of his parole/release." (*Id.*). Petitioner disputes this assertion, asserting that Respondent is falsely claiming that he failed to appear at his scheduled check-in. (Doc. 7). After Petitioner filed his traverse, Respondent filed the declaration of ICE Deportation Officer Ezekiel Higgins, attesting that Petitioner failed to appear for his annual check-ins on December 2, 2024, and December 2, 2025. (Doc. 10-9, ¶¶ 6-7). On March 15, 2026, Petitioner was arrested by ICE in Newark, New Jersey at the ICE Field Office and has remained detained without bond since.[1] (Doc. 6-7).

Petitioner claims he is being unlawfully detained by Respondent without a bond hearing under the mandatory detention provision of the INA, 8 U.S.C. § 1225(b), instead of the discretionary detention provision of the INA, 8 U.S.C. § 1226(a). This distinction matters because noncitizens detained pursuant to 8 U.S.C. § 1225(b) are not entitled to a bond hearing, whereas noncitizens detained pursuant to 8 U.S.C. § 1226(a) are entitled to a bond

---

[1]    Although Respondent does not admit as much, the DHS documents supplied indicate that Petitioner was arrested at 970 Broad Street, 11th Floor in Newark, (Doc. 6-7 at 4), which is the address for ICE's Newark Field Office and the Newark Immigration Court. https://www.ice.gov/field-office/newark-field-office (last visited May 20, 2026); https://www.justice.gov/eoir/newark-immigration-court (last visited May 26, 2026).

hearing before an Immigration Judge ("IJ"). *Patel v. O'Neil*, 2025 WL 3516865, at *2 (M.D. Pa. Dec. 8, 2025) (citations omitted). Petitioner further claims that his detention without a bond hearing violates his due process rights under the Fifth Amendment to the United States Constitution.

As directed by the Court, the Respondent filed a response to the Petition on May 6, 2026, (Doc. 6) and an amended response on May 22, 2026. (Doc. 10). The Respondent does not dispute the factual allegations contained in the Petition. Rather, the Respondent sets forth legal arguments as to why Petitioner's detention is lawful under 8 U.S.C. § 1225(b) because he is an "arriving alien." (*Id.*). It is undisputed that Petitioner has not been charged with or convicted of a criminal offense, does not have a final order of removal, and his asylum and withholding of removal applications remain pending before an IJ. It is further undisputed that DHS classified Petitioner as an "arriving alien" and released him on humanitarian parole and ordered him to appear before an IJ on June 4, 2027. (Doc. 10-7 at 3).

## II.    **STANDARD OF REVIEW**

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004 (Citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

## III.    ANALYSIS

Although not raised by either party, the Court has jurisdiction to consider the petition.[2] Turning to the merits of the petition, like many other similar situated immigration detainees, Petitioner argues that he is not subject to Section 1225(b) mandatory detention because he has been residing in the United States for years. Unlike the typical immigration habeas case, *see Patel*, 2025 WL 3516865, Petitioner was granted discretionary humanitarian parole and released into the United States on his own recognizance. The Court agrees with Petitioner that Section 1225(b) does not apply to him, because his "grant of discretionary parole" and his release from custody into the United States in December 2023, "means that he is no longer 'seeking admission' within the meaning of § 1225(b)." *Saidov v. Jamison*, 2026 WL 789087, at *3 (E.D. Pa. Mar. 20, 2026); *see also Richeme*,

---

[2]    The Court incorporates by reference its prior analyses set forth in similar habeas petitions filed by civil immigration detainees. *See Patel*, 2025 WL 3516865, at *1-7; *see also Richeme v. Warden*, 2026 WL 937546, at *1-7 (M.D. Pa. Apr. 7, 2026). Furthermore, Petitioner is not required to exhaust his administrative remedies. *Id.*

4

2026 WL 937546, at *6 (same).  As such, the Court will order Respondent to provide Petitioner with a prompt and individualized bond hearing.

Respondent claims that Petitioner's legal status as an inadmissible arriving alien subject to mandatory detention is not changed by the DHS's grant of discretionary humanitarian parole under 8 U.S.C § 1182(d)(5).  Federal district courts in this Circuit, however, disagree with Respondent's contentions, finding persons similarly situated to Petitioner can be detained, if at all, pursuant to 8 U.S.C. § 1226(a).  *See, e.g.*, *Richeme*, 2026 WL 937546, at *6 (collecting cases); *Saidov*, 2026 WL 789087, at *3 ("Respondents assert that the present case is an 'Arriving Alien' case, which they define as 'individuals who presented at a port of entry without valid entry documents, were paroled into the country under 8 U.S.C. § 1182(d)(5)(A), and, after a passage of time, recently detained under 8 U.S.C. § 1225(b)(2)(A).  While Respondents distinguish this category of cases from 'Hurtado cases,' they note that both categories share the same authority for mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  Thus, the Court's statutory analysis above applies in this so-called "Arriving Alien" category of cases."); *Gagiev v. Rose*, 2026 WL 657739, at *1 (E.D. Pa. Mar. 3, 2026) (granting habeas relief to alleged "arriving alien" where petitioner "was granted humanitarian parole upon his entry to the United States, and that parole was terminated"); *Id.* at *10 ("Nor is [petitioner] subject to mandatory detention under section 1225(b) by virtue of the termination of his parole.  In reaching this conclusion, we concur with the persuasive interpretations of numerous courts, both in this district and

5

across the country, which have found that section 1225(b) does not authorize expedited removal and detention of noncitizens who were paroled in the United States under section 1182(d)(5)(A).") (collecting cases); *Vasquez-Rosario v. Noem*, 2026 WL 196505 (E.D. Pa. Jan. 26, 2026) (similar). Because the Court agrees with the analysis of the federal district court judges who have addressed this issue, it finds that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b) because he is not "seeking admission" into the United States.

There are two statutory provisions of the INA at issue in this matter. 8 U.S.C. § 1225(b) is a statute entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It provides, in relevant part:

> **(b) Inspection of applicants for admissions**
> **(2) Inspection of other aliens**
> **(A) In General**
> Subject to subparagraph (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [removal proceedings] of this title.

8 U.S.C. § 1225(b)(2)(A). 8 U.S.C. § 1226, in contrast, is entitled "Apprehension and detention of aliens." It provides, in relevant part:

> **(a) Arrest, detention, and release**
> Or a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—

6

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole; but

(3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a).

As the Court previously found, "the overwhelming majority of federal district courts that have addressed this issue have interpreted the INA to find that persons similarly situated to Petitioner—noncitizens who previously entered the United States and are currently residing in the United States—are not subject to the mandatory detention provision of 8 U.S.C. § 1225(b) but instead are subject to the discretionary detention pursuant to 8 U.S.C. § 1226(a) and accordingly are entitled to a bond hearing." *Patel*, 2025 WL 3519895, at *4 (collecting cases).

As before, "the Court finds that the near universal rejection of Respondents' interpretation of the INA by federal district courts to be highly persuasive and will adopt the same approach." *Id.* at *5. Petitioner's detention under 8 U.S.C. § 1225(b) is unlawful under the INA because the plain language of this provision and the statutory framework of the INA compels a finding that § 1225(b) does not apply to noncitizens like Petitioner who entered the United States, was released on humanitarian parole, and has resided in the

7

United States for years.[3] *See Bethancourt Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at * 7 ("For all these reasons, the Court concludes that § 1225(b)(2)(A) applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States. Accordingly, it does not apply to individuals like Petitioner, who has been residing in the United States 'for over seven years.'"); *see also Patel*, 2025 WL 3516865 at *5 (same).

Like other Courts to address this issue, the Court finds that Respondents' interpretation of the phrase "seeking admission" violates the rule against surplusage, would negate the plain meaning of the text, and make redundant Section 1226(c) mandatory detention of noncitizens who have committed or are charged with certain specified crimes.[4] *See Centeno Ibbara*, 2025 WL 3294726, at *5-6 ("The government's interpretation of § 1225(b)(2) violates the rule against surplusage. If 'an applicant seeking admission' is the same as 'an applicant for admission,' then 'seeking admission' is surplusage. Congress has also recently adopted provisions in § 1226 that would be made superfluous under the

---

[3]     The Supreme Court has also acknowledged that 8 U.S.C. § 1226 "generally governs the process of arresting and detaining … **aliens already in the country pending the outcome of removal proceedings**." *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018) (emphasis added); *Id*. at 303 ("As noted, § 1226 applies to aliens already present in the United States."). In addition, despite the Board of Immigration Appeals holding in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), that 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens like Petitioner, "[t]his Court owes no deference to an agency's interpretation that conflicts with the statute's unambiguous text." *Bethancourt Soto v. Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024)).

[4]     "If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (Thomson/West eds., 1st Ed. 2012).

government's interpretation.  If a noncitizen enters the country illegally and is subsequently

convicted or charged with certain crimes, these new provisions require that noncitizens be

detained without a bond hearing.  Under the government's interpretation, § 1225 would

require such mandatory detention regardless of criminal charges or conviction.  If this was

the case, Congress would have no need to create additional requirements for mandatory

detention.").

Here, on December 2, 2023, DHS's Notice to Appear classified Petitioner as an

"arriving alien."  (Doc. 10-6 at 2).  According to Respondent, the INA expressly permits them

to detain Petitioner without bond as an "arriving alien."  (Docs 6, 10).  But Respondent

interpretation of the INA "would permit it to treat an immigrant who was inspected at the

border and paroled into the United States 'as seeking admission' even if that person arrived

in the country years ago."  *Saidov*, 2026 WL 789087, at *1.  Similarly, Respondent's

interpretation of the INA fails to account for the fact that Petitioner was already in the United

States for over two years when he was apprehended and arrested by Respondent in March

2026.  *Id.*  Because Respondent granted Petitioner discretionary humanitarian parole and

released him into the United States in December 2023, that "means that he is no longer

'seeking admission' within the meaning of 8 U.S.C. § 1225(b)" at the time he was arrested

and detained in March 2026.  *Id.*, at *3.  Because the Court finds that Petitioner is not

"seeking admission" into the United States, as he is already here, Section 1225(b) does not apply to him.[5]

## IV.    **CONCLUSION**

For the foregoing reasons, Petitioner's habeas petition will be granted in part because his mandatory detention under 8 U.S.C. § 1225(b) without a bond hearing is unlawful.  Accordingly, Respondent will be directed to provide Petitioner with an individualized bond hearing before an IJ within seven (7) days of the date of this Order.  A separate Order follows

Robert D. Mariani
United States District Judge

---

[5]     Nor does the "entry fiction doctrine" change the Court's conclusion.  *Gagiev*, 2026 WL 679119, at *11 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 93 L.Ed. 956 (1953); *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 S.Ct. 1959, 207 L.Ed.2d 427 (2020)).  The entry fiction doctrine, "treats noncitizens parolees—for due process purposes—as if they remain at the U.S. border."  *Id.*  Pursuant to the entry fiction doctrine, the due process rights of "an alien on the threshold of initial entry" is limited to "[w]hatever the procedure authorized by Congress is."  *Shaughnessy*, 345 U.S. at 212.  The Court finds that the procedure authorized by Congress for persons like Petitioner "who had been paroled into the United States and developed substantial connections within it prior to their detention, is detention pursuant to 8 U.S.C. § 1226—not § 1225."  *Gagiev*, 2026 WL 679119, at *11.  It will thus adopt the same approach as Judge Kelly of the Eastern District of Pennsylvania in *Gagiev* and conclude that the "entry fiction doctrine" does not apply to Petitioner and that his detention is pursuant to 8 U.S.C. § 1226.  *Id.* at *11-12.